UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Louis M. Kohus,

    Plaintiff,

        v.

                              Case No. 1:09cv503

Graco Children's Products Inc., *et al.*,        Judge Michael R. Barrett

    Defendants.

## **OPINION & ORDER**

This matter is before the Court upon Defendant Graco Children's Products Inc.'s Motion for Summary Judgment on All of Plaintiff's Claims and on its Counterclaim for Breach of Contract and Memorandum in Support.  (Docs. 73 & 77).  Plaintiff Louis M. Kohus has filed a Response (Doc. 90) and Defendant has filed a Reply (Doc. 96).

**I.    BACKGROUND**

Defendant Graco Children's Products Inc. ("Graco") manufactures children's products, including strollers, infant chairs and infant swings.  Plaintiff Louis M. Kohus develops ideas for children's products.  In the 1980s, Graco and Kohus worked together on children's playards and stroller trays.  (Doc. 77, Ex. B, Louis Kohus Dep. at 212-13). During a meeting about the playards, Kohus also presented Graco with his ideas for an open-top swing.  In a letter to Kohus dated February 25, 1987, Nate Saint, Graco's Product Design Manager, stated:

> I am writing with regard to the swing concept you showed to Ken and I when we met you, John and Derek in Cincinnati.

> We showed the rendering to Ed, Derial and Dwight. They pointed out the fact that we have considered similar designs in the past. Therefore, they are not interested in pursuing this concept any further.
>
> I have enclosed the copy you gave us with this letter. . . .

(Doc. 77, Ex. K). Enclosed with the letter is a copy of a drawing of the swing concept labeled "Portable Open-Top Infant Swing." The drawing shows an infant swing with straight legs and an A-frame design.

On July 17, 1987, Kohus presented his open-top swing concept to Jerry Drobinski, Vice President of Product Development for Graco. (Doc. 77, Kohus Dep. at 548-49). In a letter to Drobinski, Kohus states:

> Enclosed please find two (2) renderings of our swing product which you requested. I will mention that we would like these returned to us by no later than Thursday, July 23, 1987.
>
> . . .

(Doc. 77, Ex. L.) The two renderings show two different swing designs. Neither swing is the same as the drawing provided to Saint. The first design is a Y-frame design with curved legs. The seat is held by arms which curve around the back of the seat instead of straight bars which attach at the side of the seat as shown in the design provided to Saint. The second design is an A-frame design with straight legs like the drawing provided to Saint, but there are differences. First, the seat is held by the curved arms instead of the straight bars. Second, there is only one cross bar at the bottom of the frame instead of the two cross bars at the bottom of the frame in the design provided to Saint.

On July 22, 1987, Kohus sent a second letter to Drobinski:

> I am writing to confirm that I agreed to your request for a one week extension of time for you to keep our swing drawings. As you and I agreed during our telephone conversation, the new deadline for you to return them to us is now Thursday, July 30, 1987

2

> .
> I am also faxing to you the two (2) pages of advertising ideas that we did for our swings. As I indicated to you on the telephone, I believe Sam Rohrer generally liked the idea of Ad#2 which positions the swing as "Baby's First Ride-On Toy" more than he liked Ad#2 which positions the swing as on the "New Style" aspect of the Open-Top Infant Swing. There may be other features, advantages and benefits to this product that should also be considered for sales and marketing purposes. We would be happy to discuss this with you at your convenience.
> . . .

(Doc. 77, Ex. M).

Kohus claims that in 1986 and 1987, various Graco representatives promised him that they would not use his swing designs without obtaining his permission and compensating him. (Doc. 77, Kohus Dep. at 403-404).

In November of 1987, Kohus applied for a utility patent for a "Baby Swing Support Assembly." (Doc. 77, Kohus Dep. at 579). The patent was issued on April 18, 1989. (Doc. 77, Ex. O). The patent drawings show essentially the same swing as the Y-frame swing shown in the renderings sent to Drobinski.

Kohus claims that in June of 1989, at Drobinski's request, Kohus again sent drawings and pictures of his open top swing to Graco. (Doc. 17, ¶ 24). Kohus also sent a model of his open top swing. (Id.)

In February of 1994, Graco launched the "Advantage" swing, which was an A-frame open-top swing with straight legs. (Doc. 77, Ex. N, Galambos Dep. at 31-33; Ex. R). While there are two cross bars at the bottom of the frame, the front cross bar is bent back, to allow easier access to the seat of the swing. (Doc. 91-1, at 166).

In 1994, Kohus sued Graco for breach of contract based on the work on the playards. In 1996, the parties settled the case and signed a settlement agreement. (Doc. 77, Ex. G). Under the agreement, Graco agreed to pay Kohus $1.5 million and

3

Kohus agreed to release certain claims against Graco. (Id.)

In 1997, Kohus sued Graco again, this time alleging patent infringement based on one of the playards. *Kohus-Timperman Partnership v. Toys "R" Us, Inc., et al.*, No. 1:97cv997 (S.D. Ohio).

While that lawsuit was pending, in a letter dated December 6, 2000, Kohus informed Graco that he:

> recently became aware that your company is making unauthorized use of my copyrighted work entitled "Open-Top Infant Swing." My copyrighted work is registered in the U.S. Copyright Office. The Certificate of Registration number is VAu 447-388. Your new line of open-top infant swings is basically identical to my copyrighted work. It's really obvious that your company has used the prior confidential disclosures that were made to it of my copyrighted work as the foundation for its new line of open-top infant swings.

(Doc. 77, Ex. H). The "Open-Top Infant Swing" copyright work is comprised of several drawings. (Doc. 17-1). One of these drawings is the identical drawing Kohus provided to Saint and returned by him in February of 1987. (Doc. 17-1, at 7).

On June 12, 2001, the parties signed a "Settlement Agreement, General Release, and Covenant Not to Sue" (the "2001 Agreement"). (Doc. 77, Ex. A.) It is this agreement that forms the basis of Graco's Motion for Summary Judgment. As part of the 2001 Agreement, Graco agreed to pay Kohus $1.5 million for the release of the claims in the pending patent litigation over the playard. (Id.)

In 2005, Graco launched its "Silhouette" swing. The design is an open-top, Y-frame swing with curved legs. The seat is held with curved arms. (Doc. 77, Ex. W). The same year, Graco also launched its "Lovin' Hug" swing, which is an open-top, A-frame swing. (Id.) While the legs on the "Lovin' Hug" are curved, they are curved out to the side instead of being curved back as in the Y-frame swings.

4

In 2005, Kohus discovered that Graco was selling the Silhouette swing. (Kohus Dep. at 128). As required by the 2001 Agreement, in a letter dated January 20, 2009, Kohus notified Graco that Graco was infringing his "Open-Top Swing" proprietary rights and he intended to file suit. On July 17, 2009, Kohus filed the current suit. In his First Amended Complaint, Kohus brings claims for (1) copyright infringement; (2) contributory copyright infringement; and (3) promissory estoppel.

## II.  ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. Applicable law

Paragraph 20 of the 2001 Agreement provides that the Agreement is governed by Ohio law. (Doc. 77, Ex. A) ("Ohio law shall apply to all matters relating to this Agreement, including but not limited to its enforcement and/or interpretation.").

The parties do not dispute the validity of the 2001 Agreement. The dispute is whether the language of the 2001 Agreement bars the instant action, and if it does not, whether Kohus has established, for purposes of summary judgment, that Graco infringed

his copyright.

Under Ohio law, "a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." *In re All Kelley & Ferraro Asbestos Cases*, 821 N.E.2d 159, 167 (Ohio 2004); *see also Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 734 (S.D. Ohio 2009) ("A release is a contract that is favored by the law to encourage the private resolution of disputes.") (citing *Lewis v. Mathes*, 829 N.E.2d 318, 322 (Ohio Ct. App. 2005)).  As this Court has explained:

> Since a release is a kind of contract, the rules generally applicable to contracts, such as the requirement of an offer and acceptance, apply. *See Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982).  Where a contract is clear and unambiguous, its interpretation is a matter of law. *Latina v. Woodpath Development Co.*, 57 Ohio St.3d 212, 214, 567 N.E.2d 262 (1991); *Lewis*, 161 Ohio App.3d at 8, 829 N.E.2d 318 (where release is clear and unambiguous, its interpretation is a matter of law).  In construing the terms of a contract, the primary objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv. Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999).  The intent of the parties is presumed to reside in the language they choose to employ in their agreement. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362, 678 N.E.2d 519 (1997).  Absent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor. *Denlinger v. City of Columbus, Ohio Public Schools*, No. 00AP–315 (10th Dist.unreported), 2000 WL 1803923 *5 (Ohio App. Dec. 7, 2000).

*Scotts*, 606 F. Supp. 2d at 734-35.

**C.  Release of claims**

The 2001 Agreement acknowledges that the parties "have a history of litigation, which has been expensive and prolonged."  Paragraph One of the 2001 Agreement states that it is the "express intention" of the parties:

> to (a) eliminate any opportunity whatsoever for [Kohus] or [Graco] to bring any claim or cause of action of any kind against the other for any act or omission, past or present, up to and including the Effective Date [of June

6

> 12, 2001]; and (b) circumscribe certain claims by [Kohus] that may arise in the future against [Graco] by requiring that actionable infringements of proprietary rights (which includes without limitation patents, trademarks, copyrights, trade secrets, and other intellectual property rights) be willful. As part of the expression of those intentions, the Parties expressly contemplate that this Agreement will resolve any current or past claims or causes of action of [Kohus] or [Graco] against the other, including not only those claims and causes of action currently held by [Kohus] or [Graco], but also those claims and causes of action now existing but later purchased or acquired from a third party.

(Doc. 77, Ex. A). The 2001 Agreement defines "Pending Actions" as *Kohus-Timperman Partnership v. Toys "R" Us, Inc., et al.*, Case No. 1:97cv997 and *Graco v. Children's Products, Inc. v. Kohus, et al.*, Civil Action No. 98-CV-434, which was the patent litigation concerning the playard.[1] (Id.)

In the release provision of the 2001 Agreement, found at Paragraph Thirteen, Kohus agreed to release Graco from:

> (a) any and all liabilities, claims, rights, causes of action, obligations, charges, damages, debts, expenses, liens, and demands of any kind, nature, and character whatsoever (including compensatory, punitive, enhanced, or statutory damages; costs; interest; and attorneys' fees), (b) whether known or unknown, choate or inchoate, liquidated or unliquidated, absolute or contingent, currently existing regardless of whether it is currently held by [Kohus] or later acquired, (c) arising in law or in equity, under any legal theory or claim of right whatsoever, including but not limited to any United States local, state, or federal common law (including but not limited to claims arising in tort or contract, including written or oral contracts, express or implied in fact or law), statute, regulation, or ordinance, or the law of any other country or regional government (hereinafter "claims") that fall within any of the following categories:
>
> - claims that were or could have been raised in the Pending Actions;
> - claims that existed at any time up to and including the Effective Date;
> - claims based upon facts or omissions that occurred at any time up

---

[1] *Graco v. Children's Products, Inc. v. Kohus, et al.* was a declaratory judgment action for non-infringement filed by Graco in federal court in Pennsylvania based on the same patent which Kohus was alleging was infringed in his lawsuit. The Pennsylvania action was transferred to the Southern District of Ohio and the parties agreed to consolidate the cases.

>   to and including the Effective Date; and
> - claims regarding any existing contract (including written or oral contracts, express or implied, in fact or in law) between [Graco] and [Kohus], other than this Agreement.

(Doc. 77, Ex. A).

Graco argues that all of Kohus' claims are barred by the release language in the 2001 Agreement. Graco points out that Kohus claims that the copyrighted drawings were created in 1986 and provided to Graco in 1986, 1987 and 1989. Kohus claims that Graco promised him that it would not use his swing designs without obtaining his permission and compensating him in 1986 and 1987. Graco argues that because the alleged promise to pay was made before Kohus signed the 2001 Agreement, Kohus' claim for promissory estoppel is barred by the release language in the Agreement. Similarly, Graco points out that the allegedly infringing open-top swing was publicly launched in 1994, and therefore Kohus' claims for copyright infringement and contributory copyright infringement are barred by the release language in the 2001 Agreement.

Kohus responds that in Paragraph Thirteen, Kohus only released Graco from "currently existing" claims. Kohus also argues that the 2001 Agreement did not release any future claims. Kohus relies on the covenant not to sue in Paragraph Fourteen, which provides:

> Also in exchange for Graco Children's Products, Inc.'s payment, [Kohus] hereby covenants and agrees not to sue or to assert any claim or cause of action, or to commence any proceeding, either in law or equity, against Graco Children's Products, Inc. for any acts of infringement of any proprietary rights occurring prior to the date of this Settlement Agreement. Notwithstanding this covenant, only if [Kohus] can demonstrate that Graco Children's Products, Inc. has knowingly and/or willfully infringed any proprietary rights of [Kohus] after the effective date of this Settlement Agreement, then Kohus shall be entitled to pursue the full remedies at law and equity for such infringement . . .

8

(Doc. 77, Ex. A). Kohus also points out that the 2001 Agreement specifically provides for a procedure which Kohus must follow before bringing future claims of willful infringement, including providing written notice and participating in mediation. (Id.)

Kohus argues that this demonstrates that the parties agreed that only claims that accrued prior to the effective date of the 2001 Agreement were released, and Kohus could sue for future infringement of his proprietary rights. Kohus argues that his promissory estoppel claim and copyright infringement claims did not accrue until after June 12, 2001, the effective date of the 2001 Agreement.[2]

Under Ohio law, "[a]ctions for promissory estoppel accrue when the wrongful act is committed, *i.e.*, when the promise is broken." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 933 (S.D. Ohio 2012) (citing *Ohio Envtl. Dev. Ltd. P'ship v. Ohio Envtl. Protection Agency*, 09AP–683, 2010 WL 438142 *4 (Ohio Ct. App. Feb. 9, 2010). The Sixth Circuit has explained that "[a] copyright-infringement claim 'accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge.'" *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Bridgeport Music, Inc. v. Rhyme Syndicate Records*, 376 F.3d 615, 621 (6th Cir. 2004)). In addition, "a claim for copyright infringement can accrue more than once because each infringement is a distinct harm." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615 at 621.

Graco counters that the accrual date does not matter because the 2001 Agreement barred all "rights and "claims" based upon any "acts" occurring before the

---

[2] In addition, Kohus states that he is only asserting a right to recover for copyright infringement which occurred after July 17, 2006—or within three years of the filing of this lawsuit, and his promissory estoppel claim is only based on promises which were broken after July 17, 2003—or within six years of filing this lawsuit.

effective date.  Graco argues that the rights include Kohus' copyright, which existed before the effective date, and the acts are the acts of creating the drawings in 1986 and 1987.  Graco also argues that the 2001 Agreement released all "obligations" so that any oral promise which was made before the effective date cannot form the basis for Kohus' promissory estoppel claim.

Graco's interpretation reads the word "currently" out of the release.  While the 2001 Agreement specifically releases a broad category of "any and all liabilities, claims, rights, causes of action, obligations, charges, damages, debts, expenses, liens, and demands of any kind, nature, and character whatsoever," this broad category is limited to those which are "currently existing."  According to Kohus, Graco did not breach its promise until after June 12, 2001 when Graco launched its open top swings using his designs without his permission or without compensating him.  The release specifically includes a category of "claims regarding any existing contract (including written or oral contracts, express or implied, in fact or in law) between [Graco] and [Kohus], other than this Agreement," but the release does not specify whether the claim must be based on an existing *breach* of any contract, or just that the contract itself be existing.  Accordingly, Kohus' claim for promissory estoppel is not barred by the release in the 2001 Agreement.

Kohus' copyright claims are also not barred by the release.  Kohus' copyright claim did not accrue until he knew of the potential violation or is chargeable with such knowledge.  According to Kohus, he did not learn about the infringement until after the effective date of the 2001 Agreement.  The covenant not to sue in Paragraph Fourteen is specifically limited to claims based on "acts of infringement of any proprietary rights occurring prior to the date of this Settlement Agreement."  Therefore, contrary to Graco's

argument, the existence of the copyrighted material before June 12, 2001 does not mean that Kohus released his copyright infringement claims. Accordingly, Graco's copyright claims are not barred by the release in the 2001 Agreement.

### D. Willful infringement

Graco argues that Kohus has not met the requirement in Paragraph Fourteen of the 2001 Agreement that Kohus demonstrate that Graco "has knowingly and/or willfully infringed" his proprietary rights. While Kohus' copyright claims are subject to a separate summary judgment motion filed by Graco based on the useful articles doctrine (Doc. 74), the Court finds that Graco is not entitled to summary judgment on this point.

The Sixth Circuit has explained that under the Copyright Act:

> For infringement to be "willful," it must be done "with knowledge that [one's] conduct constitutes copyright infringement." *Princeton Univ. Press*, 99 F.3d at 1392 (quoting Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyright § 14.04[B][3] (1996)). Accordingly, "one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." *Id*. This belief must be both (1) reasonable and (2) held in good faith. *See id.*

*Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007). Under the Copyright Act, willful infringement is subject to an award of enhanced statutory damages. 17 U.S.C. § 504(c)(2).[3] However, there is nothing in the 2001 Agreement

---

[3]This section of the Copyright Act provides:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit

which ties the definition of "knowingly and/or willfully" as that term is used in the 2001 Agreement to this statutory scheme. The Court notes that the covenant not to sue in Paragraph Fourteen applies generally to "any act of infringement of any proprietary rights," not just the infringement of rights under the Copyright Act. Nevertheless, the Court finds that the caselaw interpreting the Copyright Act is helpful in determining the intent of the parties.

"Liability for copyright infringement does not turn on the infringer's mental state because 'a general claim for copyright infringement is fundamentally one founded on strict liability.'" *King Records, Inc. v. Bennett*, 438 F.Supp 2d 812, 852 (M.D.Tenn. 2006) (quoting *Bridgeport Music Inc. v. 11C Music*, 154 F.Supp.2d 1330, 1335 (M.D.Tenn. 2001); *Sony BMG Music Entm't v. Willis*, 1:07-CV-156, 2008 WL 2120837, *3 (S.D. Ohio May 19, 2008) ("Copyright infringement is a strict liability offense; Plaintiffs need not demonstrate Defendant's intent to infringe, or even knowledge of infringement, in order to prove copyright infringement.") (citing *Toksvig v. Bruce Pub. Co.*, 181 F.2d 664, 666 (7th Cir. 1950)). However, for purposes of damages under the Act, "the infringer's mental state is important, as damages may be increased or decreased based on an infringer's knowledge of infringement." *Id.*

As one district court has explained:

"Willful" and "innocent" have specialized meanings under the Copyright Act. On the one hand, willful infringement means conduct that the defendant knows constitutes copyright infringement. "[O]ne who has been notified

---

educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f)) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

> that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes. But one who 'recklessly disregards' a copyright holder's rights, even if lacking actual knowledge of infringement, may be subject to enhanced damages." 4 Nimmer on Copyright, § 14.04[B][3][a], at 14–78–14–79, *quoted in Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996). On the other hand, the Copyright Act explains that innocent infringement occurs when "the infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). To prove "innocent" infringement, the defendant has the burden of showing that he or she had a good faith belief that his or her infringing conduct did not amount to infringement, and that the good faith belief was reasonable. 4 Nimmer on Copyright, § 14.04[B][2][a], at 14–74.

*Id.* (footnote omitted).

It is clear from the above that the parties intended that any copyright infringement claim brought by Kohus could not be based on strict liability. Instead, Kohus would be required to demonstrate Graco's state of mind to establish liability. While Graco would have this Court equate "willful" infringement with "knowing" infringement, that is not necessarily the case under copyright law. As explained above, absent actual knowledge, a reckless disregard of copyright holder's rights can constitute willful infringement.

Graco argues that the Graco employees who designed the Graco open-top swings never saw Kohus' copyrighted drawings. Graco also argues that it believed that Kohus had released all infringement claims in the 2001 Agreement, and Graco reasonably believed that the issue had been settled. This Court finds that there are genuine issues of material fact as to both of these points.

First, Kohus disputes Graco's characterization of the testimony of the employees who designed the open-top swings. Kohus cites to the deposition testimony of Graco employees who stated that they saw curved-leg designs or saw the Kohus designs.

13

Kohus also points to the February 25, 1987 letter from Saint returning the drawing of a swing with straight legs and an A-frame design.

Second, as to whether Graco reasonably believed that the issue of the open-top swings and copyright infringement had been settled, the Court finds that there are genuine issues of material fact as to whether Graco reasonably believed its conduct amounted to copyright infringement.  As Graco points out, Graco was selling open-top swings before it entered into the 2001 Agreement, yet the Agreement is silent as to whether the manufacture and sale of open-top swings would cease after the effective date of the agreement.  However, while Graco speaks of open-top swings as a general category, Kohus claims a copyright in two specific open-top swing designs.  While Graco may have been selling the A-frame design before it entered into the 2001 Agreement, Kohus has presented evidence that Graco did not sell the Y-frame design until the introduction of the "Silhouette" swing in 2005.

Accordingly, Kohus' copyright infringement claims are not barred by the covenant not to sue provision in Paragraph Fourteen of the 2001 Agreement.

### E. Covenant not to sue

Because the Court has not found that Kohus' claims of copyright infringement are barred by the covenant not to sue provision in Paragraph Fourteen of the 2001 Agreement, Graco is not entitled to summary judgment on its counterclaim for breach of covenant not to sue.

### III. CONCLUSION

Defendant Graco Children's Products Inc.'s Motion for Summary Judgment on All of Plaintiff's Claims and on its Counterclaim for Breach of Contract (Doc. 73) is **DENIED**.

**IT IS SO ORDERED.**

                                                   */s/ Michael R. Barrett*
                                                   Michael R. Barrett
                                                   United States District Judge